| | |
|---|---|
| **UNITED STATES DISTRICT COURT** | **EASTERN DISTRICT OF TEXAS** |

UNITED STATES OF AMERICA §
§
*versus* §          CASE NO. 1:16-CR-79(1)
§
ADAM ZERMENO §

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Adam Zermeno's ("Zermeno") Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A) (#111).  The Government filed a response in opposition (#113).  After conducting an investigation, United States Probation and Pretrial Services ("Probation") recommends denying the motion.  Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.      Background

On November 2, 2016, a federal grand jury in the Eastern District of Texas returned a two-count First Superseding Indictment, charging Zermeno in Count One with Conspiracy to Possess with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. § 846 and in Count Two with Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. § 841(a)(1).  On January 6, 2017, Zermeno pleaded guilty to the offense charged in Count One of the First Superseding Indictment pursuant to a binding plea agreement.  Subsequently, on June 15, 2017, the court sentenced Zermeno to a term of 200 months' imprisonment, to be followed by five years of supervised release.  Zermeno is currently housed at Federal Correctional Institution Fairton ("FCI Fairton"), located in Fairton, New Jersey, with a projected release date of February 11, 2031.

II.    Analysis

A judgment of conviction that imposes a sentence of imprisonment is a "'final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see* 18 U.S.C. § 3582(c).  Often referred to as "compassionate release," § 3582(c)(1)(A) embodies a rare exception to a conviction's finality.  This statute gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment.  The First Step Act of 2018 ("Act"), Pub. L. No. 115-391, 132 Stat. 5194, in part, amended 18 U.S.C. § 3582(c)(1)(A), which currently provides:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a)[1] to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

> defendant is not a danger to the safety of any other person or the
> community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements
> issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

*See, e.g.*, *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this as 'compassionate release' because courts generally use it for prisoners with severe medical exigencies or infirmities.").

Rather than define "extraordinary and compelling reasons," Congress elected to delegate its authority to the United States Sentencing Commission ("Commission"). *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024); *United States v. Jackson*, 27 F.4th 1088, 1090 (5th Cir. 2022); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). Although the Commission issued a policy statement prior to the passage of the Act that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the BOP—thus, the United States Court of Appeals for the Fifth Circuit and other courts held that it was inapplicable to motions filed by defendants on their own behalf. *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Effective November 1, 2023, the Commission—responding to, among other things, the Act—amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as

"extraordinary and compelling" reasons potentially warranting compassionate release.  *See* U.S.S.G. § 1B1.13.  Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling."  *Id*. § 1B1.13(b).  These categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence.  *Id*. § 1B1.13(b)(1)-(6).

As a result, a prisoner seeking compassionate release on his own motion must satisfy the following hurdles.  The defendant must have exhausted his administrative remedies; "extraordinary and compelling reasons" must justify the reduction of his sentence or he must satisfy the requirements of § 3582(c)(1)(A)(ii); the reduction must be consistent with the Commission's applicable policy statements; and the defendant must convince the court to exercise its discretion to grant the motion after considering the § 3553(a) factors.  *See Jackson*, 27 F.4th at 1089; *Shkambi*, 993 F.3d at 392; *accord United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022).

### A.   Exhaustion of Administrative Remedies

Section 3582(c)(1)(A)'s plain language makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement that a defendant

file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory").  Accordingly, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies.  Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)).

In this instance, Zermeno appears to have exhausted his administrative remedies.  On April 10, 2023, Zermeno submitted a request for compassionate release to the warden of the facility where he was housed, citing multiple grounds in support of his request.  On May 15, 2023, Zermeno's request was rejected by the administrative remedy coordinator with instructions to resubmit the request and state only one reason as to why he qualified for compassionate release.  The government argues that Zermeno did not exhaust his administrative remedies because he failed to resubmit his request.  Probation likewise notes in its July 27, 2023, recommendation letter that, according to the BOP, Zermeno has not exhausted his administrative remedies because he has not pursued his Regional or Central Office appeals.  In addition to returning Zermeno's original request, the coordinator attached an "Informal Resolution Form," signed by his correctional counselor and unit manager, which states that Zermeno does not qualify for compassionate release because he had not completed 50% of his sentence and he had not stated compelling and extraordinary circumstances.  Although Zermeno did not resubmit his request or obtain a final determination, the substantive reasons listed on the form for rejection make it clear that

resubmission would be futile.  Furthermore, Zermeno allowed thirty days to lapse after the receipt of his request by the administrative remedy coordinator before seeking relief from the court. Although Zermeno arguably complied with the exhaustion requirement before filing his motion for compassionate release, nothing in the motion indicates that extraordinary and compelling reasons exist to reduce his sentence.

      B.     <u>Family Circumstances</u>

      1.     <u>Applicable Law</u>

Zermeno argues that his family circumstances present extraordinary and compelling reasons that justify compassionate release.  In particular, Zermeno claims that he is the only available caregiver for his elderly mother, Corine Garcia ("Garcia"), who is now 66 years old according to his Presentence Investigation Report ("PSR").  Zermeno also contends that the caregiver for his special needs son, D.A.Z., is incapacitated due to age.  Zermeno does not identify the caregiver for his son or state the caregiver's age.  In addition, the PSR contains no reference to Zermeno's son, D.A.Z., who is now approximately 9 years old, as having special needs and Zermeno provides no information on this issue.  With respect to a defendant's family circumstances, § 1B1.13(b)(3) provides that extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

      (A)    The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

      (B)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C)     The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D)     The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual.   For purposes of this provision, "*immediate family member*" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3).

In the context of § 1B1.13(b)(3), one is incapacitated, whether due to injury or illness, when he is "deprive[d] of capacity or natural power," such that he is unable to provide self-care. *See Incapacitate*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/incapacitate; *see also United States v. Bautista*, No. 3:15-cr-02720-DMS, 2024 WL 3014637, at *3 (S.D. Cal. June 14, 2024) ("Generally, a person is incapacitated when he is 'completely disabled' and cannot care for himself."). Moreover, "[f]or guidance on what constitutes 'incapacitation,' courts have looked to the [BOP's] guidelines for handling inmate compassionate release requests." *United States v. Al Hunaity*, No. CR 18-723 (RBK), 2024 WL 982044, at *5 (D.N.J. Mar. 7, 2024); *see United States v. Watson*, No. 4:18-CR-40018-KES-1, 2024 WL 1093757, at *2 (D.S.D. Mar. 13, 2024) ("[C]ourts have relied on the BOP program statement in determining that 'incapacitation' requires that the family member have suffered a severe injury or illness, leaving them incapable of acting as a caregiver."). "'Incapacitation' is defined as 'a serious injury, or a debilitating physical illness and the result of the injury or illness is that the [individual] . . . is completely disabled, meaning that the [individual] . . . cannot carry on any self-care and is totally confined to a bed or chair.'" *United States v. Collins*, No.

7

15-10188-EFM, 2020 WL 136859, at *4 (D. Kan. Jan. 13, 2020) (quoting U.S. DEP'T OF JUST.,

FED. BUREAU OF PRISONS, PROGRAM STATEMENT 5050.50 (Jan. 17, 2019)); *see United States v.*

*Crider*, No. 6:14-cr-00044-GFVT-HAI-1, 2024 WL 1291492, at *2 n.1 (E.D. Ky. Mar. 26,

2024); *United States v. White*, No. CR16-40, 2021 WL 1721016, at *4 (E.D. La. Apr. 30, 2021).

### 2.   Zermeno's Arguments Concerning his Mother

Here, Zermeno's assertion that he is the only available caregiver for his mother, Garcia,

falls under § 1B1.13(b)(3)(C).   Noticeably lacking from Zermeno's documentation is any

indication that Garcia is incapacitated in that she suffers from a serious injury or debilitating

physical illness that renders her completely disabled or that she suffers from a severe cognitive

deficit.   *See United States v. Romano*, No. 22-CR-12 (KAM), 2023 WL 8735203, at *3

(E.D.N.Y. Dec. 19, 2023) (the defendant's "failure to attach any medical evidence or opinions

(or similarly competent evidence)" rendered "the Court unable to make the necessary factual

findings"); *United States v. Ahmed*, 19 Cr. 603-1 (KPF), 2024 WL 2925112, at *5 (S.D.N.Y.

June 10, 2024) (denying compassionate release where the defendant "submitted no substantiation

of his wife's medical issues").   Indeed, Zermeno simply states in his motion that his mother is

"elderly" and does not provide further explanation other than his assertion that she needs

assistance.   Such conclusory statements do not allow the court to make the necessary factual

findings concerning the incapacity of Zermeno's mother.   The mere fact that a parent is elderly

does not, without more, automatically qualify a defendant for compassionate release under

§ 1B1.13(b)(3)(C).   *See United States v. Duprey,* No. CR 10-00101 (RK), 2024 WL 3873938, at

*2 (D.N.J. Aug. 19, 2024) ("Defendant has put forth little evidence that [his 84-year-old mother]

suffers from an incapacitating medical condition requiring Defendant's care" and "[t]herefore has

not met his burden to show [his mother's] incapacitation." (citing *United States v. Yarbrough*, No. 2:06-CR-00203-1, 2023 WL 8614050, at *3 (W.D. Pa. Dec. 13, 2023))).

Moreover, Zermeno has not demonstrated that he is the only available caregiver for his mother. *See United States v. Lopez*, No. 23-50404, 2024 WL 244935, at *1 (5th Cir. Jan. 23, 2024) (noting that the defendant "failed to explain why his other siblings could not care for his parents"); *United States v. Garcia*, No. H-21-162-01, 2024 WL 2114311, at *2 (S.D. Tex. May 10, 2024) (stating that the defendant failed to "establish that his mother has no other family members, such as brothers or sisters, who can assist with her care" and explaining that the defendant's "conclusory assertion that his wife is unavailable as a caregiver [did] not meet his burden of proof"); *United States v. Watson*, 2024 WL 1093757, at *3 ("Without evidence that [the defendant] is the only available caregiver, the court cannot determine whether [the defendant]'s family circumstances give rise to 'extraordinary and compelling reasons' for her release."); *United States v. Wrice*, No. 10-cr-40065-JPG-1, 2023 WL 4030067, at *3 (S.D. Ill. June 15, 2023) (reasoning that the defendant had not "met her burden under the proposed amendments" where she "provide[d] no statements from other family members, no affidavits or letters from medical professionals, and no other verifiable evidence to show that she is the only caretaker available or that [her] stepfather requires a caretaker"). In fact, the PSR indicates that Zermeno has a wife, two brothers, one sister, and two half sisters (one of whom is related to Zermeno through his mother, Garcia). Zermeno provides the court with no evidence suggesting that his other family members are incapable of assisting Garcia. Additionally, the PSR notes that Zermeno reported that he has a "great relationship" with his family members. In his Proposed Release Plan, Zermeno states that his family is able to provide him with food, shelter, and transportation if

released. He asserts no reason that his family could not, likewise, assist Garcia. Thus, Zermeno cannot establish that he is Garcia's only available caregiver. *See Yarbrough*, 2023 WL 8614050, at *3 (given the defendant's close family group, the court found that the defendant was not the only person who could serve as his mother's caregiver, and "there was no testimony that obviated the facial availability of other family members as potential viable caregivers"). Moreover, Zermeno has failed to show that he would be a suitable caretaker for Garcia if he were released. As explained below, Zermeno struggles with poly-substance abuse issues and has a lengthy criminal history. Habits such as these are easy to fall back into absent successful rehabilitation. Unfortunately, it is clear from Zermeno's disciplinary record that he has not been rehabilitated. Furthermore, according to his PSR, despite being physically able and having marketable skills, Zermeno has not been employed since 2010, being supported instead by his former girlfriend and selling drugs. In view of all these circumstances, the court concludes that Zermeno's purported need to care for his mother fails to constitute an extraordinary and compelling reason warranting compassionate release.

### 3.    Zermeno's Arguments Concerning his Son

Zermeno additionally asserts that the caregiver for his special needs son, D.A.Z., is no longer able to care for him. *See* § 1B1.13(b)(3)(A). Regarding requests based on § 1B1.13(b)(3)(A), the death or incapacitation of the caregiver of the defendant's minor child, "'incapacitation' is defined as 'suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child.'" U.S. DEP'T OF JUST., FED. BUREAU OF PRISONS, PROGRAM STATEMENT 5050.50 (Jan. 17, 2019); *see Al Hunaity*, 2024 WL 982044, at *5-6. Here, Zermeno asserts that his son's caregiver needs

10

assistance due to his or her age.  While it is unclear who is currently taking care of D.A.Z.,

Zermeno has not established that this person has any sort of incapacity such as a severe injury or

illness.  In addition, the court sees no reason why Zermeno's aforementioned family members,

including Zermeno's wife and D.A.Z.'s mother, Gina Gongora ("Gongora"), would be incapable

of providing care.  The PSR indicates that Zermeno and Gongora remain married, and BOP

records show that she was released from custody on December 21, 2018.

Furthermore, Zermeno does not elaborate upon the circumstances of his son's alleged

disability, nor does he explain the level of care that his son needs.  Courts have held that release

is warranted to care for a disabled child only when the situation is extreme.  *See United States v.*

*Rojas*, No. 17CR337-LAB-4, 2021 WL 4690509, at *2 (S.D. Cal. Oct. 7, 2021) (holding that

extraordinary and compelling circumstances existed where defendant's 78-year-old mother who

suffered from various medical conditions could no longer take care of defendant's special needs

daughter who was diagnosed with epilepsy, congenital deafness, infantile cerebral palsy, and

periventricular leukomalacia, as well as severe intellectual, emotional, and developmental

disabilities); *see also United States v. Barnes*, No. 317CR00011RLYMPB04, 2021 WL 1269783,

at *4 (S.D. Ind. Jan. 29, 2021) (defendant's mother, in addition to suffering from her own health

problems, became the sole caregiver to both defendant's seriously disabled son, who required 24-

hour care, and to her husband, who had developed dementia and also required 24-hour care).  In

contrast, Zermeno neglected to furnish any evidence, such as medical records, showing that

D.A.Z. is disabled, much less that his circumstances or that of his caregiver are extreme.

There is also no guarantee that Zermeno would gain custody of D.A.Z. even if he were

released from prison.  *See United States v. Reeves*, No. 3:18-CR-0313-B-2, 2020 WL 5094825,

at *3 (N.D. Tex. Aug. 28, 2020) (finding that defendant was not the only available caregiver where defendant's child was placed with family members, the process for the child's long-term placement with another family had begun, and "there [was] no guarantee" that the child would be placed with defendant if he were to get out of prison); *see also United States v. Johnson*, No. 1:15-CR-00059-NONE, 2020 WL 6075867, at *5 (E.D. Cal. Oct. 15, 2020) (holding that, although defendant's child may be in juvenile dependency proceedings due to the unfitness of the other parent, compassionate release was not warranted because defendant "failed to establish that he is likely to be found a 'suitable caretaker' for his child by the governing authorities" (quoting *United States v. Paul*, No. 3:18-cr-00227, 2020 WL 5807343 (S.D. W.Va. Sept. 25, 2020))). "[W]hen reviewing requests for compassionate release, the assessment should include, 'based on the information provided, whether release of the inmate to care for the inmate's child is in the best interest of the child.'" *Al Hunaity*, 2024 WL 982044, at *6 (quoting U.S. DEP'T OF JUST., FED. BUREAU OF PRISONS, PROGRAM STATEMENT 5050.50 (Jan. 17, 2019)).  Prior to his incarceration, Zermeno suffered from poly-substance abuse issues, including frequent marijuana, cocaine, and Adderall use.  Additionally, Zermeno would drink half a bottle of liquor per day.  Prior to his conviction for conspiracy to possess with intent to distribute a controlled substance (methamphetamine), Zermeno had a lengthy criminal record, including multiple convictions for crimes of violence and weapons offenses.  Notably, Zermeno was also arrested in 2009 for Aggravated Sexual Assault of a Child.[1]  He additionally had a history of gambling at a casino where he also distributed drugs.  As a consequence, the court rejects the notion that Zermeno's

---

[1] Zermeno's 2009 charge for Aggravated Sexual Assault of a Child was subsequently dismissed in 2011.

purported need to care for his son constitutes an extraordinary and compelling reason warranting compassionate release.

     C.    <u>Length of Zermeno's Sentence</u>

Zermeno further contends that if he were sentenced today, he likely would receive a lesser sentence.  Specifically, Zermeno argues that he would not have received the 2-point enhancement to his sentence under current law.  Zermeno, however, fails to identify any applicable post-sentencing changes in the law, or otherwise demonstrate that if he were sentenced today, he would receive a lower sentence.  To the extent that Zermeno challenges the 2-level enhancement under § 2D1.1(b)(16)(A), the enhancement was properly applied.  Under U.S.S.G. § 2D1.1(b)(16)(A):

> (16)  If the defendant receives an adjustment under §3B1.1 (Aggravating Role) and the offense involved 1 or more of the following factors:
>
>> (A)   (i) the defendant used fear, impulse, friendship, affection, or some combination thereof to involve another individual in the illegal purchase, sale, transport, or storage of controlled substances, (ii) the individual received little or no compensation from the illegal purchase, sale, transport, or storage of controlled substances, and (iii) the individual had minimal knowledge of the scope and structure of the enterprise . . .
>
> increase by 2 levels.

U.S.S.G. § 2D1.1(b)(16)(A).

The above guidelines, which are applicable in this case, make it clear that Zermeno would have received the same sentence today.  Zermeno received a three-level aggravated role adjustment due to his leadership role in the conspiracy and also received a two-level enhancement for involving his wife in the conspiracy, as she was sometimes in the vehicle with him when he delivered or transported drugs.  In his Factual Basis, Zermeno stipulated that "he used his affection with Gongora to involve Gongora in the transport of these controlled substances, and that

Gongora received little or no compensation from the drug trafficking and that Gongora had minimal knowledge of [the] scope and structure of this conspiracy." On their face, these facts fall directly under § 2D1.1(b)(16)(A), and the enhancement was consequently warranted. Contrary to Zermeno's assertion, this enhancement remains a viable provision in the current sentencing guidelines. The remainder of Zermeno's arguments constitute nothing more than an attempt to revisit determinations made years ago at the time of his sentencing in 2017. Yet, a "compassionate release motion 'is not an opportunity to second guess or to reconsider' the sentencing court's original decision." *United States v. Jabateh*, No. CR 18-216-3, 2021 WL 5802493, at *2 (W.D. Pa. Dec. 7, 2021) (quoting *United States v. Roney*, 833 F. App'x 840, 854 (2d Cir. 2020)). In any event, Zermeno was sentenced to a term of 200 months' imprisonment pursuant to a binding plea agreement, which is well below the applicable guideline range of 262-327 months. Therefore, the court is of the opinion that Zermeno's current term of imprisonment was and remains appropriate. Zermeno committed a serious offense that justified his sentence, and the circumstances he now identifies do not render that sentence unjust or inequitable. *See United States v. Lewis*, No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021).

    D.    <u>Rehabilitation</u>

Zermeno maintains that his post-sentence rehabilitation, evidenced by the courses he has taken, the programs he has completed, and the fact that he is less likely to re-offend due to his age, establishes extraordinary and compelling reasons for compassionate release. Regarding rehabilitation of the defendant, the amended policy statement recognizes: "Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13(d); *accord United States v. Martinez*,

No. 23-50418, 2024 WL 658952, at *1 (5th Cir. Feb. 16, 2024) ("Even if [the defendant] were reformed, his rehabilitation efforts alone are not an extraordinary and compelling reason for release."); *United States v. Handlon*, No. 23-50386, 2024 WL 111787, at *1 (5th Cir. Jan. 10, 2024) (holding that the defendant's "rehabilitation efforts alone are not an extraordinary and compelling reason for his release").  Nonetheless, the amendments add a proviso that states: "However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."  U.S.S.G. § 1B1.13(d).

Here, the court is unconvinced of Zermeno's rehabilitation, particularly in light of the significant disciplinary record that he has accrued while incarcerated.  According to Zermeno's disciplinary record, on August 1, 2017, Zermeno was sanctioned for destruction of property.  On June 15, 2018, Zermeno was sanctioned for possessing drugs.  On February 12, 2021, Zermeno was sanctioned for failing to follow safety regulations.  Finally, on May 12, 2022, Zermeno was sanctioned for the possession of a hazardous tool.  These infractions demonstrate that Zermeno has a pattern of recidivism and has not been fully rehabilitated.  In any event, Zermeno has failed to demonstrate any other circumstances warranting a reduction in his term of imprisonment.  Thus, even if the court were to conclude that Zermeno has been rehabilitated, this fact, without more, does not merit compassionate release.  U.S.S.G. § 1B1.13(d) (citing 28 U.S.C. § 994(t)).  While the court hopes that Zermeno will continue on the path to rehabilitation, the court is of the opinion that neither Zermeno's family circumstances, the length of his sentence, nor his rehabilitation efforts warrant his release at this time.

E.    Section 3553(a) Factors

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Chavez*, No. 23-50684, 2024 WL 940263, at *1 (5th Cir. Mar. 5, 2024); *Rollins*, 53 F.4th at 358-59; *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *United States v. Keys*, 846 F. App'x 275, 276 (5th Cir. 2021); *Shkambi*, 993 F.3d at 392; *United States v. Thompson*, 984 F.3d 431, 435 n.11 (5th Cir. 2021) (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020).  Zermeno's offense of conviction stems from his participation in a conspiracy to possess with intent to distribute a controlled substance and his actual distribution of 50 grams or more of methamphetamine and 500 grams or more of cocaine HCl.  Specifically, on November 16, 2015, officers from Orange County, Texas, performed a traffic stop on Lauren Courmier ("Courmier") who was in possession of approximately 9 ounces methamphetamine and identified Zermeno as her supplier.  Law enforcement officers then determined that Zermeno was a large-scale distributor who supplied and recruited other distributors.  Confidential informants and undercover officers subsequently made contact with Zermeno to purchase various amounts of methamphetamine.  On February 9, 2016, a confidential source ("CS") and an undercover officer ("UC") met with Zermeno in his vehicle where the CS provided Zermeno with $550 for one ounce of suspected methamphetamine.  The substance was later determined to be 27.1 grams of "actual" methamphetamine.  On March 8, 2016, Courmier was again arrested in Orange County, Texas, for possession of methamphetamine and identified

Zermeno as the source.  The CS and UC then met with Zermeno on March 16, 2016, to purchase one and one-half ounces of methamphetamine in exchange for $575.   During this transaction, which again took place in Zermeno's vehicle, Gongora sat in the passenger seat.  The substance was seized and was determined to be 41.3 grams of "actual" methamphetamine.

On September 8, 2016, Zermeno was pulled over on his way back from a casino in Lake Charles, Louisiana, with his wife and two small children by a deputy from the Jefferson County Sheriff's Office.   A search of Zermeno's vehicle led to the discovery of marijuana, methamphetamine, crack cocaine, and cocaine (HCl) inside of a camouflage bag.  Zermeno and Gongora were then arrested.  The seized methamphetamine was determined by laboratory analysis to be 83.3 grams of methamphetamine "actual."  Video footage later obtained from the casino showed Zermeno carrying the same camouflage bag while departing from the casino with Gongora and his children on the day he was arrested.  Zermeno stipulated that he was an organizer of the drug conspiracy and that he used his affection with Gongora to involve her in the transport of controlled substances.  He further admitted that he was personally responsible for the possession and distribution of between 150 and 500 grams of methamphetamine "actual" as part of the conspiracy.

In addition to the nature and circumstances of his offense of conviction, Zermeno's lengthy criminal history similarly demonstrates that he poses a danger to the community. As previously discussed, Zermeno's criminal history includes prior convictions for burglary of a motor vehicle, unauthorized use of a vehicle (2x), unlawfully carrying weapons, burglary of a habitation, criminal mischief, aggravated robbery, evading arrest, deadly weapon in a penal institution, assault, attempted theft, and bail jumping (failure to appear).  He accumulated 15 criminal history points,

17

which exceeds the 13 points necessary to be classified in the highest criminal history category of VI.  Probation also reports, as mentioned above, that Zermeno has accumulated a significant disciplinary record while incarcerated.  Specifically, on one occasion, a prison officer discovered a homemade weapon hidden in Zermeno's sock.  The weapon was a piece of metal rod, approximately six inches long, sharpened to a point on one end with cloth wrapped around the other end to serve as a handle.

The court further observes that Zermeno has a long history of poly-substance abuse, including the frequent use of alcohol, marijuana, cocaine, and Adderall.  Regarding Zermeno's history of substance abuse, courts are precluded from "lengthening a prison term in order to promote a criminal defendant's rehabilitation," but in the present case, the court is deciding whether to reduce, not extend, a sentence. *Tapia v. United States*, 564 U.S. 319, 321 (2011); *see Chambliss*, 948 F.3d at 694.  Here, Zermeno's disciplinary record reflects that he has continued to rely on illicit substances while incarcerated, as Probation reports that he was disciplined in June 2018 for "possessing drugs/alcohol."  The court is of the opinion that releasing Zermeno may facilitate his continued poly-substance abuse, as he would gain unfettered access to alcohol, as well as to over-the-counter medications and illegal drugs.

In support of his motion, Zermeno points to his completion of recidivism-based programs and asserts that his age indicates that he poses a low risk for recidivism.  Courts have long recognized, however, that drug dealing constitutes a danger and threat to the community.  *United States v. Hare*, 873 F.3d 796, 799 (5th Cir. 1989); *accord United States v. Grimaldo*, No. 4:08-CR-107-SDJ, 2022 WL 4126106, at *7 (E.D. Tex. Sept. 9, 2022) (denying compassionate release to inmate found guilty of participating in a drug trafficking conspiracy involving large amounts

of cocaine and marijuana despite his completion of numerous programs and saving his cellmate's life by performing CPR, reasoning that he continues to pose a danger to the community based on the totality of the circumstances); *United States v. Dotrey*, No. 2:13-CR-004, 2021 WL 4191454, at *8 (E.D. Tex. Sept. 15, 2021) (denying compassionate to drug trafficker despite his insistence that his offense was non-violent, he had been rehabilitated, and he had been rated by the BOP as having a low risk of recidivism). "Although a defendant may not have been convicted of a violent crime, 'that does not make his offense any less serious or dangerous to the community.'" *United States v. Thomas*, No. 14-246, 2021 WL 1721014, at *3 (E.D. La. Apr. 30, 2021) (quoting *United States v. Bailey*, No. 17-244, 2020 WL 6701533, at *3 (E.D. La. Nov. 13, 2020) (citing *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985) ("The harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger.'"))). Zermeno is only 45 years old. It is not apparent to the court that Zermeno's age alone would deter him from reengaging in criminal conduct. Moreover, Zermeno's involvement of others in his drug-related activities and his history of violent crime make him a significant danger to the community.

In addition, granting Zermeno compassionate release would fail to provide just punishment for his offense and promote respect for the law. In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence. 948 F.3d at 694. The district court determined that the defendant's terminal illness "constitute[d] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the

§ 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Id.* at 694; *see Rollins*, 53 F.4th at 359-60; *Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"); *accord United States v. Rodriguez*, 27 F.4th 1097, 1100 (5th Cir. 2022). Here, Zermeno has only served about half of his sentence. Releasing him now or reducing his sentence would similarly minimize the impact of his crime and the seriousness of his offense as well as fall short of providing just punishment and adequate deterrence to criminal conduct. As Probation noted in its initial Sentencing Recommendation, Zermeno "has a lengthy criminal history with poor adjustment under supervision. He has returned to criminal conduct despite prior imprisonment terms. He also has a history of supporting himself from criminal conduct despite the fact that he has skills which would allow him to obtain and maintain lawful employment." The court also concurs with Probation's current recommendation that Zermeno's motion for compassionate release be denied. As Probation notes, "BOP case management staff and medical staff are in the best position to consider Mr. Zermeno's status as it relates to the appropriateness of compassionate release." On balance, in addition to the reasons discussed above, the court declines to exercise its discretionary authority § 3582 in light of the applicable factors set forth in § 3553(a).

III.   Conclusion

In sum, Zermeno has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. As the court

noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, Zermeno's track record is similarly a poor one. There is no reason to believe that he would not revert to his prior drug-dealing and drug-abusing behavior, his commission of acts of violence, and his engaging in other criminal activity if released from prison at this juncture. *See United States v. Wymer*, 573 F. Supp. 3d 1208, 1212 (N.D. Ohio 2021). The 200-month sentence of imprisonment imposed upon Zermeno for conspiracy to possess with intent to distribute 50 grams or more of "actual" methamphetamine in violation of 21 U.S.C. § 846 comports with the 18 U.S.C. § 3553(a) factors, and he has adduced no extraordinary and compelling reasons to lessen his sentence or release him from prison at this juncture. Neither his family circumstances, the length of his incarceration, nor his efforts at rehabilitation merits a reduction of sentence under these circumstances.

Accordingly, Zermeno's Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A) (#111) is DENIED.

SIGNED at Beaumont, Texas, this 3rd day of September, 2024.

_Marcia A. Crone_
_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE